UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROOSEVELT JENNINGS,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Case No. 10-12830

HON. AVERN COHN

## MEMORANDUM AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (DOC. 13) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 12) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 11)

### I. Introduction

This is a social security case. Plaintiff Roosevelt Jennings appeals from the final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security disability benefits. Jennings claims disability since April 6, 2004 based on carpal tunnel syndrome (CTS), hypertension, chronic sinusitis, type II diabetes, and sleep apnea.

The parties filed cross motions for summary judgment. The Court referred the motions to a Magistrate Judge (MJ) for a report and recommendation (MJRR). The MJ recommended that the Court deny Jennings' motion for summary judgment and grant the Commissioner's motion. (Doc. 13). Jennings filed timely objections to the MJRR.[1] (Doc. 14). For reasons that follow, the Court adopts the MJRR, Jennings' Motion for Summary Judgment (Doc. 11) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

---

[1] The Commissioner did not file a response to Jennings' objections.

## II. Background

### A. Pre-Claim Medical History

The material facts as gleaned from the administrative record and the parties' papers follow. Jennings was forty-eight years old at the time of the alleged onset of disability. Jennings had a high school education and an associate's degree in law enforcement. Previous employment included work as an assembly technician at Daimler Chrysler, which ended April 6, 2004.

Jennings had a lengthy history of carpal tunnel syndrome. In 1993, Dr. Shin-Young Kang performed "carpel tunnel release surgery" on Jennings' left hand. Kang instructed Jennings to restrict his activity to light work and avoid use of air tools. Jennings also suffered from CTS in his right hand. Dr. Samson Samuel treated Jennings from 1996-2002; Samuel recommended "carpel tunnel release surgery" on Jennings' right hand. However, Jennings refused to pursue surgery to treat his CTS. In addition, Samuel recommended cortisone shots but Jennings also refused this treatment. Jennings' says he refused because he found the shots ineffective. Similar, to Jennings' other treating physicians, Samuel advised against the use of vibrating or high torque tools.

Dr. Mark Olson treated Jennings from 1993-2004. In 2004, he reported "severe conduction abnormalities" in Jennings' right hand and residual abnormalities in the left. During the same period, Jennings sought treatment for several other conditions from Drs. Kubek and Merkler. In response to complaints of rhinosinusitus Kubek recommended Jennings quit smoking. Jennings smoked a pack of cigarettes a day for

2

nearly forty years. Merkler treated Jennings for the same condition and recommended weight loss. Merkler also remarked Jennings was an "erratic historian."

### B. Post-Claim Medical History

Jennings also saw Dr. Matthew Zimmey regularly. In 2005, Zimmy diagnosed Jennings with hypertension, high cholesterol, chronic sinusitis,[2] and prostatitis.[3] Zimmey concluded Jennings could lift and carry up to fifty pounds, stand, walk, sit for six hours a day, and use both hands and arms for simple grasping and reaching but not for pushing/pulling or fine manipulation.

According to Jennings, he experienced numbness, tingling, and a loss of control in his hands and severe pain in his wrists. Doctors treated Jennings' pain with prescription narcotic painkillers. Jennings argues he has difficulty completing normal activities. Specifically, Jennings says he is limited in his ability to hold objects, tie his shoes, button a shirt, prepare meals, and to perform housework. In July 2005, Jennings reported to his treating physicians that he could perform all of these activities.

Although his physicians diagnosed Jennings with hypertension several times, he consistently refused treatment, he says, because the medication did not agree with him. As part of the disability claims process, Jennings underwent an assessment of "Physical Residual Functional Capacity Assessment" and a psychological review. The physical assessment identified CTS, hypertension, and obesity as Jennings' impairments. The psychologist diagnosed Jennings with mild depression. Neither the psychological nor the physical assessment indicated anything beyond mild limitations.

---

[2] Inflammation of the sinus cavities.

[3] Prostatitis is swelling and inflammation of the prostate gland.

### C. Administrative Hearing

After Jennings' denial at the claims level, he requested a hearing before an administrative law judge (ALJ). A vocational expert (VE) testified at the hearing. The ALJ posed two hypotheticals to the VE. The first asked the VE to consider whether a person with Jennings' education and experience would be able to work if limited to lifting 20 pounds occasionally and 10 pounds frequently, allowing for limitations on sitting and standing, and avoiding power hand tools. The VE testified that this person could not complete Jennings' past relevant work but could complete visual inspection and sorting jobs.

Next, The ALJ asked the VE whether that person could work in a job that involved sitting, standing, or walking for 6-8 hours, limited requirements of pushing and pulling, no fine manipulation, and no use of hand tools. The VE indicated that this person could not perform Jennings' past relevant work but could work as an usher, lobby attendant, or information clerk. The VE went on to testify that if the ALJ credited all of Jennings' exertional impairments he could still perform sedentary work with a sit/stand option. However, the VE said if the ALJ credited Jennings' non-exertional impairments he would be unable to work.

### D. Findings of the ALJ

The ALJ determined that Jennings suffered from hypertension and CTS. After considering the evidence, the ALJ found that these conditions did not constitute a listed impairment under the Social Security Act. The ALJ concluded that Jennings could perform unskilled light work activity. The ALJ based these findings, in part, on a determination that Jennings' description of the intensity and limiting effects of his

symptoms was not entirely credible. The ALJ explained that Jennings' treatment regime was routine and conservative. Further, that Jennings' cared for himself with only minor difficulty completing daily activities. These two facts, according to the ALJ, were not consistent with the limitations Jennings' asserted.

### E. Objections to MJRR[4]

The MJ reviewed the decision of the ALJ and recommended the Court grant the Commissioner's motion for summary judgment. Jennings filed timely objections to the MJRR. Jennings' objections to the MJRR argue the ALJ incorrectly assessed his credibility, posed inaccurate hypotheticals to the VE, and incorrectly considered the testimony of Rebecca Lindsey, who performed the "Physical Residual Functional Capacity Assessment."

### III. Legal Standard

Judicial review of a Social Security disability-benefits application is limited to determining whether the "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record

---

[4] Jennings makes several other arguments in his motion for summary judgment that do not appear in this objections to the MJRR. The Court will consider the objections to the MJRR raised by Jennings.

taken as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference with the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds objectionable are reviewed *de novo*. 28 U.S.C. § 636(b)(1)(c); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. Discussion

### A. Credibility Assessment

The denial of Jennings' claim turned on the credibility of his testimony as to the severity and extent of his impairments. The ALJ did not fully credit Jennings' descriptions of his limitations. The ALJ, however, is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982). Jennings, of course, is an interested witness.

The role of the Court in reviewing a denial of social security benefits is limited. "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987).

However, if an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so. See *Auer v. Sec'y of Health and Human Servs.*, 830 F.2d 594, 595 (6th Cir.1987). The ALJ clearly stated his reasons; the level of treatment and

ability to complete daily activities was inconsistent with the severity of Jennings' complaints.

Although entitled to deference, the determination of credibility by an ALJ must be supported by substantial evidence. *Walters*, 127 F.3d at 331. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401. The medical evidence in this case is well documented, including Jennings' refusal of treatment for his impairments. From the lack of aggressive treatment, the ALJ concluded the conditions were not severe enough to impair Jennings' ability to work. Specifically, Jennings' consistently refused surgery to relieve CTS in his right wrist. Additionally, Jennings refused to treat his hypertension with prescribed medication, quit smoking, or lose weight. Jennings correctly points out he is not required to undergo surgery although the choice not to do so is probative of the severity of his condition.

The ALJ also found that Jennings' ability to complete daily activities was inconsistent with a finding of disability. Specifically, Jennings retained the ability to complete almost all of his daily routine. In addition, the ALJ found that the medical evidence did not support a finding of disability. The ALJ noted that none of the medical personnel offered an opinion that Jennings was disabled. Further, the limits imposed by Jennings' doctors were consistent with the residual functional capacity found by the ALJ. Moreover, a nerve conduction study in 2004 found no evidence of "thenar atrophy"[5] and that the ulnar condictions were in the normal range. Dr. Banerji examined Jennings in July 2005 (around the time he filed his disability claim) and diagnosed CTS

---

[5] A group of muscles located at the base of the thumb.

7

but noted a normal grip, and no significant abnormal physical findings or functional limits. Jennings underwent a physical as a prerequisite to work as a taxicab driver in 2006. The physical noted normal gross motor and sensory function. Finally, Dr. Zinny cleared Jennings to work in 2005 albeit with some minor restrictions. There is substantial evidence to support the ALJ's determination.

### B. Testimony of the VE

#### 1. Hypothetical Questions

Jennings objects to the hypothetical questions posed by the ALJ to the VE on the basis that they did not include his full limitations. The ALJ framed the questions on what he found consistent with Jennings' limitations. Hypothetical questions posed need only include those limitations that are supported by the record, *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)., the ALJ did just that. The ALJ already determined that Jennings' impairments were not as severe as he claimed and constructed the hypothetical questions accordingly. Both hypotheticals posed to the VE by the ALJ reflected the limitations supported by the record.

#### 2. Opinion of the VE

After the ALJ found Jennings could not perform past relevant work the burden then shifted to the Commissioner to show the existence of other jobs in the national economy which, given his impairments, Jennings can perform. The Commissioner can meet this burden by relying on the testimony of a VE. 20 C.F.R. §§ 416.912, 416.920. *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999). The VE testified that Jennings could manage light work and that a significant number of jobs existed in the national economy. This conclusion is consistent with the evidence on the record.

The VE identified several jobs that she said Jennings qualified for including, usher, night watchman, greeter, information clerk, or badge checker. Jennings says that all of the positions listed above require use of the hands, of which he says he is incapable. However, the evidence on the record does not demonstrate that Jennings lacks any ability to use his hands. The positions identified above require no more ability than Jennings employs in his daily activities. Moreover, this objection is a reincarnation of Jennings' objection to the credibility determination. Like the credibility determination, this objection concerns the scope of his abilities. The ALJ determined the scope was not as limited as Jennings' claimed. Because the ALJ's conclusions were supported by substantial evidence, a hypothetical consistent with those findings is not an error.

### C.  Testimony of Rebecca Lindsey

Finally, Jennings objects to the MJ's reference to the "Physical Residual Functional Capacity Assessment." In the MJRR, the MJ mentions the report, which was prepared by Rebecca Lindsey. Lindsey is not a medical doctor and Jennings' argues this report should not have evidentiary weight. Jennings, however, conflates the MJ's discussion with the ALJ's decision. The ALJ references Lindsey's report but does not discuss it. The MJ mentions it only in passing. There is no indication the ALJ relied on it in his finding of facts. Given the other medical evidence consistent with the ALJ's conclusions, Lindsey's report was cumulative. Even if considering the report was improper, it was harmless error.

**SO ORDERED.**

Dated:  January 13, 2012            s/Avern Cohn
                                    **AVERN COHN**
                                    **UNITED STATES DISTRICT JUDGE**

## CERTIFICATE OF SERVICE

**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Friday, January 13, 2012, by electronic and/or ordinary mail.**

                          **s/Julie Owens**
                          **Case Manager, (313) 234-5160**